**Matthew L. HILL, Petitioner,**

v.

**Michael SHEETS, Respondent.**

Case No. 2:07–cv–539.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 4, 2008.

Matthew L. Hill, Chilicothe, OH, pro se.

### OPINION AND ORDER

MICHAEL H. WATSON, District Judge.

On July 3, 2008, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus conditionally be granted on claim one, in which petitioner asserts that his sentence violates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that petitioner's sentence be vacated and petitioner released from incarceration unless the State re-sentences him within sixty (60) days. The Magistrate Judge further rec-

ommended that claim two, petitioner's sole remaining claim for relief, be dismissed.

Although the parties explicitly were advised of the right to object to the Magistrate Judge's *Report and Recommendation*, and of the consequences of failing to do so, petitioner has filed no objections.[1]

Respondent, however, has filed objections to the Magistrate Judge's *Report and Recommendation*. Respondent objects solely to the Magistrate Judge's conclusion that petitioner established cause for the procedural default of his *Blakely* claim and the Magistrate Judge's recommendation that the petition for a writ of habeas corpus conditionally be granted on such claim.

For the reasons that follow, respondent's objections are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. Claim two is **DISMISSED**. The petition for a writ of habeas corpus conditionally is **GRANTED** on claim one. Petitioner's sentence is **VACATED**, and petitioner shall be released from incarceration unless the State resentences him within sixty (60) days.

Respondent again argues that petitioner cannot establish the ineffective assistance of appellate counsel as cause for the procedural default of petitioner's *Blakely* claim because the trial court justified imposition of maximum and consecutive sentences based solely upon petitioner's prior sentence and facts either admitted by petitioner or reflected in the jury's verdict and because, at the time petitioner filed his appellate brief, the Ohio Fifth District Court of Appeals had concluded that *Blakely* did not apply to Ohio's sentencing statutes. Respondent also again argues that petitioner has failed to establish prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because under *State v. Foster*, 109

Ohio St.3d 1, 845 N.E.2d 470 (2006), the trial court is free to re-impose the same sentence upon remand. Finally, referring to *Cobbin v. Hudson*, 2008 WL 552484 (N.D.Ohio February 26, 2008), respondent argues that habeas corpus relief is not warranted because no clearly established federal law of the United States Supreme Court mandates that *Blakely* applies when a trial court imposes consecutive sentences based upon judicial fact finding.

■ Respondent's arguments are not persuasive. Contrary to respondent's argument here, the record indicates the trial court justified imposition of sentence based upon petitioner's prior record as well as factual findings neither admitted by the defendant nor reflected in the jury's verdict, for example, that petitioner had shown no genuine remorse, failed to acknowledged a pattern of alcohol and drug abuse as it related to the offenses, had not learned from his past experiences in the criminal system, and that maximum sentences were necessary to protect society given, *inter alia*, petitioner's nature, and because petitioner possessed the greatest likelihood of committing further crimes of a similar nature. *See Sentencing Transcript, Exhibit B to Motion in Opposition; Entry of Judgment, Exhibit 3 to Return of Writ.* As noted by the Magistrate Judge, petitioner was sentenced after *Blakely* and his appeal remained pending after the Ohio Supreme Court issued its decision in *Foster*, invalidating portions of Ohio's sentencing scheme as unconstitutional under *Blakely*. Thus, the two-prong test of *Strickland* has been met based upon appellate counsel's failure to raise a *Blakely* claim on direct appeal. Further, this Court remains unpersuaded that petitioner has failed to establish prejudice simply

---

1. In a footnote, respondent refers to objections of the petitioner, *see Respondent's Objec*tions; however, the docket does not indicate that petitioner has filed any objections.

because the state trial court may re-impose the same sentence upon remand.

The flaw in this reasoning is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error.... [S]peculation that a judge might repeat his or her sentence without explicit factfinding does not render an error harmless as a certainty. The former scenario involves the realities of state law-either it affords an avenue to render the error harmless or it does not-while the latter presupposes a reality in which but one outcome is certain. But because more than one outcome is possible upon re-sentencing, basing harmlessness [or lack of prejudice] on an assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of *always* harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a *certainty* that the error is harmless.

*Villagarcia v. Warden, Noble Correctional Institution*, 2007 WL 1028528 (S.D.Ohio March 30, 2007). The Court need not address respondent's argument as it relates to *Cobbin v. Hudson, supra,* and *Blakely's* alleged nonapplication to imposition of consecutive sentences since the trial court in this case imposed maximum as well as consecutive sentences based upon prohibited judicial fact finding.

Pursuant to 28 U.S.C. § 626(b)(1) this Court has conducted a *de novo* review of the *Report and Recommendation.* This Court has carefully considered the entire record. For the foregoing reasons and for reasons detailed in the Magistrate Judge's *Report and Recommendation,* respondent's objections are **OVERRULED.** The *Report and Recommendation* is **ADOPTED** and **AFFIRMED.** Claim two is **DISMISSED.** The petition for a writ of habeas corpus conditionally is **GRANTED** on claim one. Petitioner's sentence is **VACATED,** and petitioner shall be released from incarceration unless the State re-sentences him within sixty (60) days.

**IT IS SO ORDERED.**

### ORDER and REPORT AND RECOMMENDATION

MARK R. ABEL, United States Magistrate Judge.

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, respondent's Return of Writ, petitioner's traverse, petitioner's request for a stay, respondent's opposition, petitioner's reply, petitioner's motion to strike, and the exhibits of the parties.

This action involves petitioner's convictions after a jury trial in the Muskingum County Court of Common Pleas on two counts of felonious assault with firearm specifications. The trial court imposed the maximum possible sentence of an aggregate term of sixteen years incarceration. The Fifth District Court of Appeals affirmed the trial court's judgment, and the Ohio Supreme Court dismissed petitioner's subsequent appeal. The state appellate court denied petitioner's application to re-open the appeal pursuant to Ohio Appellate Rule 26(B), and the Ohio Supreme Court dismissed petitioner's subsequent appeal. Although post conviction proceedings were still pending at the time petitioner filed this habeas corpus petition, on December 17, 2007, the state appellate court dismissed petitioner's post conviction appeal. It does not appear from the record that petitioner ever pursued a timely appeal of that decision to the Ohio Supreme Court.

In this habeas corpus petition, petitioner asserts that his sentence violates *Blakely*

*v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that his convictions and sentence violated the Double Jeopardy Clause. For the reasons that follow, petitioner's request for a stay, Doc. No. 10, is **DENIED,** as moot. Petitioner's motion to strike respondent's response to his request for a stay, Doc. No. 15, is **DENIED.** The Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED** on claim one, that petitioner's sentence be **VACATED** and petitioner be released unless the State re-sentences him within sixty (60) days. The Magistrate Judge further **RECOMMENDS** that claim two be **DISMISSED.**

## PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the procedural history of this case as follows:

On February 2, 2004, Appellant entered the residence of Danny Thornhill. An altercation occurred between Appellant and Thornhill. During this altercation, Thornhill was struck repeatedly with a handgun. Thornhill fled the residence, followed by Appellant who fired at least two shots at Thornhill. By the time police arrived, Appellant had fled from the scene.

On February 11, 2004, the Muskingum County Grand Jury indicted Appellant on the following charges: one count of Aggravated Robbery with a gun specification, in violation of Ohio Revised Code Section 2911.01(A)(1) and 2941.145, a felony of the first degree; one count of Aggravated Burglary with a gun specification, in violation of Ohio Revised Code Section 2911.11(A)(2) and 2941.145, a felony of the first degree; two counts of Felonious Assault with a gun specification, in violation of Ohio Revised Code

Section 2903.11(A)(2) and 2941.145, a felony of the second degree; one count of Theft of a Firearm, in violation of Ohio Revised Code Section 2913.02(A)(1) and 2941.145, a felony of the fourth degree; and one count of Aggravated Burglary with a gun specification, in violation of Ohio Revised Code Section 2911.11(A)(1) and 2941.145, a felony of the first degree.

On February 18, 2004, appellant appeared for arraignment and pled "not guilty" to all counts set forth in the Indictment.

On August 3, 2004, a jury heard the case. At the conclusion of the trial, the jury deliberated and returned a verdict of "guilty" on the two counts of Felonious Assault with a gun specification, in violation of Ohio Revised Code Section 2903.11(A)(2) and 2941.145, both felonies of the second degree. The Jury found Appellant "not guilty" on all other counts.

Appellant was sentenced on September 20, 2004. At the sentencing hearing, the trial court heard the report of the presentence investigator and the arguments of counsel for the respective parties before pronouncing sentence. Ultimately, the trial court sentenced Appellant to serve a prison sentence of eight years on each count of Felonious Assault and three years on each gun specification, all sentences to be served consecutive to one another for a total sentence of 22 years. This sentence is the maximum sentence that Appellant could have received for the crimes for which he was convicted.

Appellant filed an appeal on October 15, 2004 challenging the trial court's imposition of consecutive, maximum sentences. Appellant argued the trial court failed to conduct judicial fact-finding required by the sentencing statutes prior to impos-

ing consecutive, maximum sentencing. He also claimed the trial court committed error by failing to merge counts three and four of the indictment for purposes of sentencing. On April 10, 2006, this Court overruled these assignments of error and affirmed the Appellant's conviction and sentence in *State v. Hill,* Muskingum App. No. CT2004–0047, 2006–Ohio–2565 [2006 WL 1413252]. Appellant's appeal to the Ohio Supreme Court was denied by entry dated August 23, 2006.

On April 24, 2006, appellant filed a "Motion to Vacate or Set Aside Judgment of Conviction or Sentence Pursuant to Rule 60(B)(4), (5), (6)." The trial court summarily denied the motion on March 7, 2007. Shortly thereafter, appellant filed a "Motion for Findings of Fact and Causes (sic) of Law." On April 9, 2007, appellant filed a Notice of Appeal.

Appellant raises two Assignments of Error:

"I. THE TRIAL COURT ERRED WHEN IT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS GRANTED BY THE SIXTH AND FOURTEENTH AMENDMENTS AS ESTABLISHED BY THE UNITED STATES SUPREME COURT IN *APPRENDI V. NEW JERSEY.*"

"II. TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO VACATE HIS SENTENCING JUDGMENT UNDER CIVIL RULE 60(B)(4) & (5) WITHOUT GIVING REASONS AND CAUSES (sic) OF LAW."

*State v. Hill,* 2007 WL 4395143 (Ohio App. 5 Dist. December 17, 2007). On December 17, 2007, the appellate court affirmed the trial court's dismissal of petitioner's post conviction petition. *Id.* The record before this Court does not indicate that petitioner pursued a timely appeal to the Ohio Su-

preme Court, and this Court is unable to locate any indication of such an appeal.

On June 7, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Fair trial, unconstitutional sentence.

The sentencing factors used by the trial court in imposing sentence violated the defendant-appellant's right to a fair trial because they were made by the trial judge instead of a jury.

2. Ineffective assistance of counsel, double jeopardy.

Appellate counsel was ineffective for not raising on direct appeal that the defendant-appellant was placed in jeopardy twice for the same offense thus violating the appellant's 14th Amendment right to due process as well as his 5th and 6th Amendment rights.

It is the position of the respondent that petitioner's claims are procedurally defaulted and without merit.

### MOTION FOR STAY; MOTION TO STRIKE

On December 18, 2007, petitioner filed a request for a stay of proceedings pending exhaustion of state court post conviction proceedings. Doc. No. 10. As discussed, *supra,* however, the Ohio Court of Appeals has since dismissed petitioner's post conviction appeal. *State v. Hill, supra.* Further, the time period for filing an appeal of that decision to the Ohio Supreme Court has now expired, and petitioner may now no longer file an appeal, as Ohio does not permit delayed appeals in post conviction proceedings. Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(c). Therefore, the instant action is no longer unexhaust-

ed. Petitioner's request for a stay therefore is **DENIED,** as moot.

Petitioner has filed a motion to strike respondent's opposition to his request for stay as redundant, impertinent and immaterial. Doc. No. 15. Petitioner contends that respondent's opposition to his request for a stay improperly addressed the merit of petitioner's *Blakely* claim, included a copy of the sentencing transcript, and improperly addressed the issue of harmless error. *See id.* These arguments are not well taken. Such issue properly relate to the potential merit of petitioner's *Blakely* claim, which must be considered in determining whether to grant a stay in habeas corpus proceedings. *See Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). Further, and in any event, as discussed, petitioner's request for a stay is moot since post conviction proceedings are no longer pending in the state courts. Petitioner's motion to strike, Doc. No. 15, therefore is **DENIED.**

## FAIR PRESENTMENT

Respondent contends that petitioner has waived the right to raise his *Blakely* claim in these federal habeas corpus proceedings because he did not present the federal issue to the Ohio Fifth District Court of Appeals.

■ In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74

L.Ed.2d 3 (1982) *(per curiam)*; *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In claim one, petitioner asserts that his sentence violates *Blakely.* This claim, being readily apparent from the face of the record, would properly be raised on direct appeal; however, petitioner raised the claim solely as an issue of state law before the Ohio Fifth District Court of Appeals. *See Exhibit 5 to Return of Writ.* He did not refer to the federal Constitution, any federal cases, or any state cases relying on federal law in support of his claim. *See id.* The state appellate court likewise reviewed his claim for an alleged violation of state law only:

[A]ppellant alleges that the trial court erred when it sentenced appellant to consecutive sentences. Appellant contends that the trial court failed to make all of the findings to impose consecutive sentences and that the findings made by the trial court were not supported by the record. We disagree.

In order to impose consecutive sentences, a trial court must comply with R.C. § 2929.14(E)(4) and R.C. § 2929.19(B)(2)(c).

R.C. § 2929.14(E)(4) states as follows:

"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the of-

fender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

"(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

Revised Code 2929.19(B)(2)(c) requires that a trial court state its reasons for imposing consecutive sentences.

The Ohio Supreme Court addressed when and where a trial court must state the required findings and reasons to impose a consecutive sentence. In *State v. Comer*, the Ohio Supreme Court held that the findings and reasons to impose consecutive sentences must be stated by the trial court at the sentencing hearing. *State v. Comer*, 99 Ohio St.3d 463, 2003–Ohio–4165, 793 N.E.2d 473.

The import of the decision in *State v. Comer, supra*, is that the trial court must explain its decision to impose consecutive sentences to a defendant and base its decision upon the statutorily enumerated criteria. This procedure allows trial counsel "the opportunity to correct obvious errors ... [and] encourages judges to decide how the statutory factors apply to the facts of the case." *Id.* at 477–78. This procedure will also enable an appellate court to conduct a meaningful review of the sentencing decision. *Id.* at 465–66 [793 N.E.2d 473]. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Id.* at 466 [793 N.E.2d 473]. (Citations omitted).

R.C. 2953.08(G)(2) instructs the appellate court to review the "record" to determine whether consecutive sentences were properly imposed in a given case. Although the word "imprisonment" is not defined in R.C. 2929, R.C. 1.05(C) defines "imprisoned" as " 'imprisoned' or 'imprisonment' means being imprisoned under a sentence imposed for an offense or serving a term of imprisonment, prison term, jail term, term of local incarceration, or other term under a sentence imposed for an offense in an institution under the control of the department of rehabilitation and correction, a county, multi-county, municipal, municipal-county, or multi-county-municipal jail or workhouse, a minimum security jail, a community-based correctional facility, a halfway house, an alternative residential facility, or another facility described or referred to in section 2929.34 of the Revised Code for the type of criminal

offense and under the circumstances specified or referred to in that section." In the case at bar, the transcript of the sentencing hearing indicates that the trial court found that the two crimes were separate and distinct offenses. (T. at 11.)

The trial court also found that the Appellant's "criminal history shows that consecutive terms are needed to protect the public. Therefore, the Court will order that the 8–year sentences be served consecutively. Given your nature and your history and all that you have done so far, the Court finds that it's needed to protect the public." (T. at 12).

Additionally, the trial court found that a minimum sentence would demean the seriousness of the offense and also not adequately protect society, and the maximum sentence is necessary to protect society because [appellant] create[s] the greatest likelihood of committing further crimes of similar nature." (T. at 11–12.) Based upon the foregoing, we find that the court made sufficient findings to meet the mandates set forth in R.C. § 2929.14(E)(4) and R.C. § 2929.19(B)(2)(c).

* * *

... [A]ppellant argues that trial court erred in sentencing him to the maximum sentences on the two counts of felonious assault. We disagree.

An appellate court may not disturb an imposed sentence unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C. 2953.08(G)(1); *State v. Garcia* (1998), 126 Ohio App.3d 485, 487 [710 N.E.2d 783]. Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Garcia* at 487 [710 N.E.2d 783].

When reviewing a sentence imposed by the trial court, the applicable record to be examined by the appellate court includes the following: (1) the pre-sentence investigation reports; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statement made to or by the court at the sentencing hearing at which the sentence was imposed. R.C. 2953.08(F)(1) through (3); *State v. Mills* (September 25, 2003), 5th Dist. No. 03–COA–001 [2003 WL 22208740]. The sentence imposed by the trial court should be consistent with overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." Pursuant to R.C. 2929.14(C), a trial court may impose a maximum sentence under the following conditions:

"(C) * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."

This statute is to be read in the disjunctive. See *State v. Comersford* (June 3, 1999), Delaware App. No. 98–CAA–01004 at 3 [1999 WL 436745]. Accordingly, a maximum sentence may be imposed if the trial court finds any one of the above-listed offender categories apply. The trial court also received and considered a pre-sentence investigation and report and found nothing in said report to rebut the presumption for prison. (T. at 10–11.)

Again, as stated above, the trial court noted that the appellant had an extensive criminal record. (*Id.* at 11–12). The trial court further found Appellant had not learned from his past mistakes. (*Id.*)

The trial court also found "that the minimum sentence would demean the seriousness of the offense and also not adequately protect society, and the maximum sentence is necessary to protect society because [appellant] create[s] the greatest likelihood of committing further crimes of similar nature." (T. at 11–12.)

We find from a review of the transcript of the sentencing hearing that the trial court made sufficient findings to meet the mandates set forth in R.C. 2929.14(C).

*State v. Hill,* 2006 WL 1413252 (Ohio App. 5 Dist. April 10, 2006).

Petitioner did thereafter present his *Blakely* claim to the Ohio Supreme Court. *See Exhibit 11 to Return of Writ.* However, the Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. See *Mitts v. Bagley,* 2005 WL 2416929 (N.D.Ohio Sept. 29, 2005)(habeas petitioner's failure to raise a claim in the Ohio Court of Appeals precludes review by the Ohio Supreme Court), citing *Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir.1982)(citing *State v. Phillips,* 27 Ohio St.2d 294, 302, 272 N.E.2d 347 (1971)).

■ Citing *Noland v. Hurley,* 523 F.Supp.2d 659, 668–69 (S.D.Ohio 2007), petitioner contends that he preserved his *Blakely* claim for federal habeas corpus review by raising the claim in the first instance in his appeal to the Ohio Supreme Court. *See Traverse, Exhibits to Traverse.* In *Noland,* the undersigned concluded the petitioner preserved his *Blakely* claim for federal habeas corpus review by reasonably promptly and fairly presenting

the claim to the state courts at the first opportunity he had to do so, *i.e.,* on appeal to the Ohio Supreme Court. *Noland,* however, differs significantly from the scenario in this case because Noland was sentenced prior to the United States Supreme Court's June 24, 2004, decision in *Blakely,* and appellate counsel had withdrawn from the appeal under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), also prior to *Blakely.* Noland filed a *pro se* appellate brief the same day of *Blakely.* Noland thereafter presented his *Blakely* claim to the Ohio Supreme Court. Here, in contrast, the trial court sentenced petitioner on September 20, 2004, *see State v. Hill, supra,* approximately three months after *Blakely* yet petitioner neither objected to his sentence on that basis nor raised a *Blakely* claim in the Ohio Fifth District Court of Appeals.

■ Petitioner argues that it would have been futile to do so because the appellate court would have ruled against him; however, the Ohio Supreme Court issued *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006)(striking provisions of Ohio's sentencing statutes as unconstitutional under *Blakely* ) on February 27, 2006, and during the time that petitioner's direct appeal was pending. Still, he made no attempt to amend his appellate brief to include such claim. Further, the exhaustion requirement is not excused simply because the state court may have decided adversely to the petitioner. *See Rucker v. Rose,* 626 F.Supp. 416, 418 (M.D.Tenn. 1985), citing *Robinson v. Berman,* 594 F.2d 1, 3 (1st Cir.1979)(Hostility of state courts to petitioner's position "will excuse exhaustion on the ground of futility only when the question raised in the federal-proceeding has recently been decided adversely to the petitioner by the highest court of the state"); *see also Landrum v. Commonwealth of Kentucky,* 380 F.Supp.

1338, 1339 (D.C.Ky.1974)("While a meaningless foray through local tribunals is not required", state courts must be afforded an opportunity to consider the claims forwarded.) (Citations omitted).

Additionally, since *Noland* (citing *State of Ohio v. Scranton Buchanan*, 2006 WL 3059911 (Ohio App. 7 Dist. Oct. 26, 2006), noting that the Ohio Supreme Court had considered *Blakely* claims that had not been raised in the appellate court below), the Ohio Supreme Court has held that defendants like Hill, sentenced after *Blakely*, must object at sentencing or forfeit the error for appellate review. *State v. Payne*, 114 Ohio St.3d 502, 506, 873 N.E.2d 306 (2007). The state appellate court in this case noted the same in its dismissal of petitioner's post conviction appeal:

> [T]he Ohio Supreme Court recently decided *State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642 [873 N.E.2d 306], addressing for the first time whether *Blakely* error can be forfeited by a defendant. The *Payne* court noted that not every case would be entitled to a resentencing hearing in the wake of *Foster*. The Court held "that a lack of an objection in the trial court forfeits the *Blakely* issue for purposes of appeal when the sentencing occurred after the announcement in *Blakely*. *Id.* at ¶ 31. In this case, appellant was sentenced post-*Blakely*. A review of the sentencing transcript on September 20, 2004, shows appellant failed to preserve a *Blakely* objection and therefore appellant, under *Payne*, failed to timely assert his *Blakely* rights and his failure to preserve the objection must be treated as forfeiture. We note appellant's case was pending on direct appeal at the time *Foster* was rendered, however, appellant failed to challenge the constitutionality of Ohio's sentencing statutes on direct appeal. A Rule 60(B) motion is not the proper vehicle to assert constitutional

errors in sentencing. See, *State v. Randlett*, Franklin App. No. 06AP–1073, 2007–Ohio–3546 [2007 WL 2009535] (a petition of post-conviction relief under R.C. 2953.21 and Crim.R. 35 is the exclusive remedy by which a defendant may bring a collateral challenge to his conviction or sentence).

*State v. Hill*, 2007 WL 4395143 (Ohio App. 5 Dist. December 17, 2007). Petitioner apparently did not file an appeal of that decision. Thus, it appears that petitioner's *Blakely* claim is waived.

The Court presumes that petitioner asserts the ineffective assistance of counsel for this procedural default. The ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). For the reasons that follow, the Magistrate Judge concludes that petitioner's ineffective assistance of counsel claim is meritorious and constitutes cause for any procedural default of petitioner's *Blakely* claim.

The state appellate court rejected petitioner's claim of ineffective assistance of counsel as follows:

> We … find that Appellant's arguments regarding sentencing and federal constitutional claims not well taken in that appellate counsel appealed appellant's sentence and the findings made by the trial court at the sentencing hearing. This Court affirmed the judgment of the trial court.

> Based on the foregoing, this Court does not find that that [sic] Appellant has proven that his appellate counsel was ineffective in failing to assign the forego-

ing as error. He further fails to show prejudice therefrom.

*Exhibit 15 to Return of Writ.*

The factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e) provides:

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson,* 416 F.3d 470, 475 (6th Cir.2005).

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);

see also *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697, 104 S.Ct. 2052. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). Defendants appealing their criminal convictions enjoy the same Sixth Amendment right to the effective assistance of counsel on a direct appeal as of right that they have during trial. While appellate counsel is not expected to raise every nonfrivolous issue on direct appeal, counsel is obligated to provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). As with an ineffective assistance of trial counsel claim, a petitioner must demonstrate that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052;

*Sims v. Livesay*, 970 F.2d 1575, 1579–81 (6th Cir.1992). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

a. Were the omitted issues "significant and obvious?"

b. Was there arguably contrary authority on the omitted issues?

c. Were the omitted issues clearly stronger than those presented?

d. Were the omitted issues objected to at trial?

e. Were the trial court's rulings subject to deference on appeal?

f. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

g. What was appellate counsel's level of experience and expertise?

h. Did the Petitioner and appellate counsel meet and go over possible issues?

i. Is there evidence that counsel reviewed all the facts?

j. Were the omitted issues dealt with in other assignments of error?

k. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir.1999). This list is not exhaustive and need not produce a certain "score." *Id.* at 428.

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),

the defendant pleaded guilty to second-degree possession of a firearm for an unlawful purpose, which carried a prison term of 5–to–10 years. Thereafter, the

trial court found that his conduct had violated New Jersey's "hate crime" law because it was racially motivated, and imposed a 12–year sentence.

*United States v. Booker*, 543 U.S. 220, 230, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The Supreme Court set aside the sentence, holding:

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Id., citing Apprendi v. New Jersey, supra,* 530 U.S. at 490, 120 S.Ct. 2348.

In *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), [the Supreme Court] reaffirmed ... that the characterization of critical facts is constitutionally irrelevant. There, [the Supreme Court] held that it was impermissible for "the trial judge, sitting alone" to determine the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty. *Id.,* at 588–589, 122 S.Ct. 2428. "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Id.,* at 602, 122 S.Ct. 2428. Our opinion made it clear that ultimately, while the procedural error in Ring's case might have been harmless because the necessary finding was implicit in the jury's guilty verdict, *id.,* at 609, n. 7, 122 S.Ct. 2428, "the characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury," *id.,* at 605, 122 S.Ct. 2428.

In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), we dealt with a determinate sentencing scheme similar to the Federal Sentencing Guidelines. There the defendant pleaded guilty to kidnaping, a class B felony punishable by a term of not more than 10 years. Other provisions of Washington law, comparable to the Federal Sentencing Guidelines, mandated a "standard" sentence of 49–to–53 months, unless the judge found aggravating facts justifying an exceptional sentence. Although the prosecutor recommended a sentence in the standard range, the judge found that the defendant had acted with " 'deliberate cruelty' " and sentenced him to 90 months. *Id.,* at 300, 124 S.Ct., at 2534.

For reasons explained in *Jones* [*v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ], *Apprendi,* and *Ring,* the requirements of the Sixth Amendment were clear. The application of Washington's sentencing scheme violated the defendant's right to have the jury find the existence of " 'any particular fact' " that the law makes essential to his punishment. 542 U.S., at 301, 124 S.Ct., at 2536. That right is implicated whenever a judge seeks to impose a sentence that is not solely based on "facts reflected in the jury verdict or admitted by the defendant." *Id.,* at 303, 124 S.Ct., at 2537 (emphasis deleted). We rejected the State's argument that the jury verdict was sufficient to authorize a sentence within the general 10–year sentence for Class B felonies, noting that under Washington law, the judge was *required* to find additional facts in order to impose the greater 90–month sentence. Our precedents, we explained, make clear "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Ibid.* [at 303, 124 S.Ct., at 2537] (emphasis in original). The determination that the defendant

acted with deliberate cruelty, like the determination in *Apprendi* that the defendant acted with racial malice, increased the sentence that the defendant could have otherwise received. Since this fact was found by a judge using a preponderance of the evidence standard, the sentence violated Blakely's Sixth Amendment rights.

*Id.*, at 231–232, 125 S.Ct. 738. In *United States v. Booker, supra,* the Supreme Court struck the mandatory provisions of the United States Sentencing Guidelines as unconstitutional under *Blakely. Id.*, at 258–259, 125 S.Ct. 738.

The Ohio Supreme Court in *State v. Foster, supra,* has similarly stricken portions of Ohio's sentencing statutes as constitutionally prohibited under *Blakely:*

Certain aspects of Ohio's felony sentencing plan are unconstitutional when measured against the Sixth Amendment principles established in *Blakely.* The reason for this is, like many state legislatures that attempted sentencing reform, the Ohio General Assembly, through its enactment of S.B. 2 in 1996, authorized narrower sentencing ranges and restricted the discretion of trial judges by *mandating* that underlying "findings" be made before increasing what seems to be a presumptive sentence. In other words, the sentence is not determined "solely on the basis of facts reflected in the jury verdict or admitted by the defendant" as *Blakely* requires. (Emphasis omitted.) *Id.*, 542 U.S. at 303, 124 S.Ct. 2531, 159 L.Ed.2d 403.

* * *

Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in *Booker,* "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*, 543 U.S. at 244, 125 S.Ct. 738, 160 L.Ed.2d 621. Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant, before repeat violent offender and major drug offender penalty enhancements are imposed, they are unconstitutional. *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

*State v. Foster, supra,* 109 Ohio St.3d at 19–25, 845 N.E.2d 470. The Ohio Supreme Court excised the unconstitutional provisions of its sentencing statutes in accordance with the Supreme Court's remedial action in *United States v. Booker,* 543 U.S. 220, 258–259, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)(severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety).

We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial factfinding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the

defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial factfinding is not required before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2) and (3) are capable of being severed. After the severance, judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*State v. Foster, supra,* 109 Ohio St.3d at 29–30, 845 N.E.2d 470. The Ohio Supreme Court further held:

These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.

*Id.,* at 31, 845 N.E.2d 470.

Here, as discussed by the state appellate court, the trial court imposed consecutive maximum sentences after making factual findings. The entry of judgment indicates in relevant part:

Defendant has been convicted of:

Count Three: Felonious Assault with a Gun Specification, a felony of the second degree, in violation of ORC § 2903.11(A)(2), subject to the sentencing guidelines of ORC 2929.13(D), and the gun specification in violation of ORC § 2941.145, subject to a mandatory consecutive three year prison sentence.

Count Four: Felonious Assault with a Gun Specification, a felony of the second degree, in violation of ORC § 2903.11(A)(2), subject to the sentencing guidelines of ORC § 2929.13(D), and the gun specification in violation of ORC § 2941.145, subject to a mandatory consecutive three year prison sentence.

The Court finds that the presumption for second degree felonies is a prison term and that a gun specification is a mandatory consecutive sentence.

The Court after consideration of purposes and principles under Revised Code § 2929.11, and the factors under § 2929.12 and 2929.13(D), finds that the offenses were facilitated by the defendant's relationship with the victim, that he has a prior adjudication, a history of criminal convictions, has failed to respond in the past to probation, has failed to acknowledge a pattern of alcohol/drug abuse related to the offenses, and shows no genuine remorse. The Court further, finds that the Defendant as a juvenile was convicted of Aggravated Vehicular Assault, Aggravated Vehicular Homicide, and Robbery; as an adult he has a conviction for domestic violence, and was ordered to attend an anger management class. Based upon the factors found, the Court finds that the presumption for prison has not been rebutted.

The Court further finds that a minimum sentence would demean the seriousness of the offenses, and would not adequately protect society. The Court in further consideration of the Defendant's record finds that he has numerous prior crimes of violence, that he has a continuing pattern of violent acts, and that he poses the greatest likelihood of committing future crimes, and in order to punish the defendant and protect the public maximum consecutive sentences are not only warranted, but are not disproportionate to the danger the defendant poses. The Court further finds that the offenses herein, as well as the gun specifications are not of allied similar import and the

defendant shall be sentenced on both counts and both gun specifications.

\* \* \*

IT IS, THEREFORE, ORDERED that the Defendant serve the following stated prison terms:

Count Three: eight (8) years.

Gun Specification on Count Three: three (03) years mandatory consecutive;

Count Four: eight (8) years.

Gun Specification on Count Four: three (03) years mandatory consecutive;

Counts three and four shall run consecutive to each other and the gun specifications on each of counts three and four shall also run mandatory consecutive and shall be served prior to any sentence imposed herein, for an aggregate sentence of twenty-two (22) years.

*Exhibit 3 to Return of Writ.* At sentencing, the trial court justified imposition of sentence as follows:

The Court finds that the two most serious offenses committed by you, that you were found guilty of, are felonies of the second degree. Felonies of the second degree carry a presumption for prison. The Court found nothing contained within the report or the testimony to rebut that presumption.

The Court also finds that the two counts are separated in time and place sufficiently to make sure that they are not similar import. And there is also two gun specifications. Given the testimony that the Court heard at trial, it's quite possible that two separate weapons could have actually been involved in the two offenses. Therefore, the Court finds that the two counts are separate counts and do not merge.

The Court also finds that, given your prior criminal history going back to a juvenile, which includes robbery, thefts, the normal run-a-way type offenses as well as aggravated vehicular assault and aggravated vehicular homicide, you have

hurt people in the past and obviously you have not learned from it; including a domestic violence in 2003 and discharging a firearm in 2004, and then you go break into a person's house and end up shooting at him on the street.

Based upon that, the Court finds, first of all, that a prison sentence is appropriate. The Court also finds that the minimum sentence would demean the seriousness of the offense and also not adequately protect society, and the maximum sentence is necessary to protect society because you create the greatest likelihood of committing further crimes of similar nature. You have throughout your history so far. Therefore, the Court will impose an 8–year sentence on each of the felonies of the second degree.

The Court also finds that your criminal history shows that consecutive terms are needed to protect the public. Therefore, the Court will order that the 9–year sentences be served consecutively. Given your nature and your history and all that you have done so far, the Court finds that it's needed to protect the public.

*Sentencing Transcript,* September 20, 2004, at 10–12, *Exhibit B to Motion in Opposition.* Thus, the record indicates trial court justified imposition of maximum consecutive sentences based upon findings of fact in addition to petitioner's prior record that were neither admitted by petitioner nor reflected by the jury's verdict. *See also Exhibit 6* (*Judgment Entry of Sentence*); *Exhibits 10 and 18* (for the appellate court decisions affirming trial court's imposition of maximum consecutive sentences).

█ For the reasons detailed at length by the Ohio Supreme Court in *State v. Foster, supra,* this Court agrees that the trial court's imposition of maximum and consecutive sentences under O.R.C.

§ 2929.14(E), (C) violated *Blakely.* As discussed by the Ohio Supreme Court in *State v. Foster, supra,*

> R.C. 2929.14(C), which states that *"the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."* (Emphasis added.)

> Although this statute does not use the word "findings," our holdings in *State v. Edmonson,* 86 Ohio St.3d at 329, 715 N.E.2d 131, and *State v. Evans,* 102 Ohio St.3d 240, 2004–Ohio–2659, 809 N.E.2d 11, recognize that R.C. 2929.14(C) is mandatory and prohibits maximum sentences unless the required findings of fact are made beforehand....

> We have consistently held that R.C. 2929.14(C) requires that specific findings be made before a maximum sentence is authorized. *Evans,* 102 Ohio St.3d 240, 2004–Ohio–2659, 809 N.E.2d 11, at ¶ 15; *Edmonson,* 86 Ohio St.3d at 325, 715 N.E.2d 131. As it stands, R.C. 2929.14(C) creates a presumption to be overcome only by judicial fact-finding. It does not comply with *Blakely.*

### Consecutive Prison Terms

> ... R.C. 2929.14(E)(4) requires the court to find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In addition, at least one of three more findings of fact must be found: that the offender was already under control of the court due to an earlier conviction,[FN83] that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct,[FN84] or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public."[FN85]

FN83. R.C. 2929.14(E)(4)(a).

FN84. R.C. 2929.14(E)(4)(b).

FN85. R.C. 2929.14(E)(4)(c).

> While other state courts have held that their statutes on consecutive sentences do not violate *Blakely* ... Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently. See R.C. 2929.41(A); *State v. Barnhouse,* 102 Ohio St.3d 221, 2004–Ohio–2492, 808 N.E.2d 874, at ¶ 11. R.C. 2929.41(A) states, *"Except as provided in* division (B) of this section, *division (E) of section 2929.14,* or division (D) or (E) of section 2971.03 of the Revised Code, *a prison term,* jail term, or sentence of imprisonment *shall be served concurrently* with any other prison term." (Emphasis added.) Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms,[FN87] judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) require trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal. *State v. Comer,* 99 Ohio St.3d 463, 2003–Ohio–4165, 793 N.E.2d 473.

> \* \* \*

FN87. R.C. 2929.14(E)(1) through (3).

Thus, with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge.... [B]ecause the total punishment increases through consecutive sentences only after judicial findings beyond those determined by a jury or stipulated to by a defendant, R.C. 2929.14(E)(4) violates principles announced in *Blakely*.

*State v. Foster, supra*, 109 Ohio St.3d at 21–22, 845 N.E.2d 470 (footnote omitted).

Despite the meritoriousness of petitioner's *Blakely* claim, respondent contends that appellate counsel's failure to raise the claim on appeal was a constitutionally reasonable strategic decision because application of *Blakely* to Ohio's sentencing statutes was uncertain prior to *Foster* and the Ohio Fifth District Court of Appeals had held that *Blakely* was inapplicable to Ohio's sentencing statutes. Respondent also contends that appellate counsel was not required to anticipate the Ohio Supreme Court's ruling in *State v. Foster*. *Return of Writ*, at 15. These arguments are not persuasive.

As discussed, the trial court sentenced petitioner on September 20, 2004, after the United States Supreme Court's June 24, 2004, decision in *Blakely*. Notably, the Ohio Supreme Court issued *Foster* on February 27, 2006, during the time that petitioner's direct appeal was still pending— yet counsel made no effort to amend his appellate brief to include such a claim. Counsel acted unreasonably in ignoring the *Blakely* decision, which had obvious potential implications on the constitutionality of Ohio's sentencing scheme and on the sentence actually imposed in this case, particularly after *Foster*, and where he asserted on appeal claims that the trial court acted unreasonably in imposing maximum and consecutive sentences. Further, no strategic reason could have supported counsel's failure. Petitioner ran no risk of any increase in his sentence if he succeeded on his *Blakely* claim, because he had already received the maximum sentence. *State v. Foster, supra*, established petitioner's prejudice. Although "a later change in the law will not render an attorney's earlier performance deficient," *Nichols v. United States*, 501 F.3d 542, 545 (6th Cir. 2007), citing *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir.1999); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir.1986), an exception to this general rule "can arise when counsel 'fail[s] to raise an issue whose resolution is clearly foreshadowed by existing decisions.'" *Id.* Such are the circumstances here. *See id.*, at 546–547, distinguishing *United States v. Burgess*, 142 Fed.Appx. 232 (6th Cir.2005)(holding that an attorney's failure to predict *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), did not constitute ineffective assistance of counsel), on the basis that Burgess' sentence did not raise any due process or Sixth Amendment concerns that precipitated *Blakely*. *See United States v. Burgess, supra*. Moreover, *Blakely* had been decided long before petitioner's direct appeal, and *Foster* was issued while petitioner's appeal was pending. Therefore, appellate counsel was not required to anticipate these decisions to raise the issue in petitioner's appellate brief.

Therefore, the Court concludes that petitioner has established the ineffective assistance of counsel as cause for the procedural default of his claim that his sentence violates *Blakely*, and that this claim is meritorious. The Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED** on claim one, and that petitioner's sentence be **VACATED** and petitioner be released unless the State re-sentences him within sixty (60) days.

## CLAIM TWO

In claim two, petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on direct appeal a claim that his convictions and sentence violated the Double Jeopardy Clause. The state appellate court rejected this claim as follows:

> With regard to the double jeopardy argument, Appellate counsel raise[d] the argument that the two felonious assault counts were allied offenses of similar import and therefore should have been merged. We reviewed this claim and found same to be not well taken.

*Exhibit 15 to Return of Writ.*

The state appellate court rejected petitioner's claim that his convictions were allied offenses of similar import as follows:

> Appellant argues that his two felonious assault counts were allied offenses of similar import and therefore should have been merged. We disagree.
>
> At the outset we would note that appellant failed to object at trial or sentencing to the trial court's failure to merge the offenses. "A defendant's failure to object to convictions or sentencing at trial results in a waiver of an allied offense claim on appeal absent plain error". *State v. Denham,* Greene App. No.2001 CA 105, 2002–Ohio–3912, at ¶ 10 [2002 WL 1769798], following *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640.
>
> Upon review of the transcript, we find that as to the two counts of felonious assault, the victim testified as follows:
>
> "Q: What happened after he walked in?
>
> "A: Well, he pulled a gun out.
>
> " * * *
>
> "Q: Do you know whether the gun was a rifle or a pistol?
>
> "A: It was a handgun
>
> " * * *

> "Q: Now, Mr. Thornhill, after he waved this gun, this handgun in your face, what happened?
>
> "A: Well, I knocked it out of my face and I hit him.
>
> " * * *
>
> "A: Oh, I knocked the gun out of my face and hit him and he came back and busted me right in the head, right there with the gun, the barrel of the gun because he had it like this (INDICATING). He hit me so hard it recoiled the shell out of the gun onto my floor.
>
> " * * *
>
> "Q: Could you describe the degree of your injury?
>
> "A: I had 13 stitches in the forehead. It was like three or four on the inside and the rest was on the outside, and I had two marks on my knee where he hit me with-
>
> " * * *
>
> "Q: Now, after he struck you with, I believe you said the barrel of the gun"
>
> "A: Yes, sir.
>
> "Q: What happened?
>
> "A: I was kind of blinded and dizzy, so all I could see was my dog jumped on him. I had a boxer named Joe. Joe and he jumped on him, kind of kept him occupied for a minute, and I saw my shotgun laying there and I reached for my shotgun and he got it before I did and started swinging it around the table and busting everything on my table and it busted me in the knee twice. And I was going to go to my room and he pulled the shotgun up and clicked the hammer back and said if I moved he was going to kill me . . . ."

(T. at 89–93).

The jury during deliberations, the jury posed the following question to the Court:

"What is the difference between Count 3 and Count 4 of felonious assault? (T. at 455).

The trial court's answer was:

"You must apply the facts as determined-you determine them to be to each count in the indictment and decide each count separately." (T. at 455–456).

Appellant's trial counsel's response was: "Can't argue with that." (T. at 456).

The then deliberated further and ultimately returned guilty verdicts and gun specifications on each of the two felonious assault charges.

During sentencing, the trial court stated:

"The Court also finds that the two counts are separated in time and place sufficiently to make sure that they are not similar import. And there is also two gun specifications. Given the testimony that the Court heard at trial, it's quite possible that two separate weapons could have actually been involved in the two offenses. Therefore, the Court finds that the two counts are separate counts and do not merge." (Sent. T. at 11).

Upon review, this Court finds that Appellant committed two separate acts of felonious assault, albeit on the same victim, and therefore the offenses are not allied offenses of similar import but are offenses of dissimilar import. As such, appellant was properly convicted and sentenced for both of the felonious assault counts.

*State v. Hill, supra*, 2006 WL 1413252. Again, the factual findings and decision of the state appellate court are presumed to be correct. 28 U.S.C. 2254(e). Petitioner has failed to establish that federal habeas corpus relief is warranted.

■ The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)(requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.[1]

1. In *Grady v. Corbin*, 495 U.S. 508, 519, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which was decided after *Blockburger*, the United States Supreme Court held that the Double Jeopardy Clause also barred prosecution of multiple offenses where the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. However, the Supreme Court overruled the "same conduct" rule of *Grady*, concluding that *Grady* was inconsistent with Supreme Court precedent and the common law understanding of double jeopardy. *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

■ In addition, a defendant cannot be prosecuted for a greater offense after conviction or acquittal of the lesser included offense. *Brown v. Ohio, supra.* In *Brown,* the defendant was convicted on his guilty plea to the offense of joyriding and was subsequently convicted of the offense of auto theft. Both convictions were based on the same events. Under Ohio law, joyriding is a lesser included offense of auto theft. The Supreme Court, noting that conviction on a charge of joyriding required no proof not required for conviction on a charge of auto theft, held that the subsequent prosecution of the greater charge was precluded by double jeopardy principles. 432 U.S. at 168–69, 97 S.Ct. 2221. The Supreme Court emphasized that the prohibition of successive prosecutions serves a policy of finality, protecting a defendant from a government's attempts to re-litigate facts or secure additional penalties. *Id.,* at 165–66, 97 S.Ct. 2221.

■ As noted in *Palmer v. Haviland,* 2006 WL 1308219 (S.D.Ohio May 11, 2006), Ohio's statute on allied offenses, O.R.C. 2941.25, as defined by the Ohio Supreme Court in *State v. Rance, supra,* is based on concerns arising from the Double Jeopardy Clause.

*Rance* involved the branch of the Double Jeopardy Clause that protects against multiple punishments for the same offense in relation to Ohio's "allied offenses" statute, Ohio Rev.Code § 2941.25. The defendant in *Rance* argued that the imposition of cumulative punishments in a single trial for two separate offenses that the defendant claimed constituted the same offense violated the Double Jeopardy Clause. The Supreme Court of Ohio addressed the specific issue of whether "R.C. 2941.25(A) and the constitutional protections against double jeopardy prohibit trial courts from imposing separate sentences for both involuntary manslaugh-

ter and aggravated robbery." 85 Ohio St.3d at 634, 710 N.E.2d at 702. The Ohio Supreme Court recognized that "the double jeopardy protections afforded by the federal and state Constitutions guard citizens against ... cumulative punishments for the 'same offense.'" *Rance,* 85 Ohio St.3d at 634, 710 N.E.2d at 702. The Ohio Supreme Court noted that "the Fifth Amendment's Double Jeopardy Clause (made applicable to the states by the Fourteenth Amendment) and Ohio's counterpart are sufficiently similar to warrant consultation of federal jurisprudence when analyzing Ohio's proscription against placing persons 'twice ... in jeopardy for the same offense.'" *Id.* The *Rance* Court went on to analyze United States Supreme Court precedent on double jeopardy, including the decision in *Blockburger v. United States,* 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932) .... [and] ultimately determined that the Ohio legislature could prescribe imposition of cumulative punishments for crimes stemming from the same criminal act "without violating the federal protection against double jeopardy or corresponding provisions of a state's constitution." 85 Ohio St.3d 632, 635, 710 N.E.2d 699, 702 citing *Albernaz [v. United States ],* 450 U.S. [333] at 344 [101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ].

*Id.* (Footnote omitted). In view of similarities of the protections under Ohio's statute on allied offenses and the Double Jeopardy Clause, appellate counsel was not constitutionally ineffective for failing to raise the alleged error under federal, as well as a state law. Further, based upon the factual findings discussed by the state appellate court, this Court concludes that the state appellate court's conclusion that evidence reflected two separate criminal acts and that petitioner's convictions therefore did not violate the Double Jeopardy

Clause was not unreasonable so as to justify federal habeas corpus relief. 28 U.S.C. 2254(d), (e). Claim two is without merit.

For all of the foregoing reasons, petitioner's request for a stay, Doc. No. 10, is **DENIED,** as moot. Petitioner's motion to strike respondent's response to his request for a stay, Doc. No. 15, is **DENIED.** The Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED** on claim one, that petitioner's sentence be **VACATED** and petitioner be released unless the State re-sentences him within sixty (60) days. The Magistrate Judge further **RECOMMENDS** that claim two be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

*United States v. Walters,* 638 F.2d 947 (6th Cir.1981).